## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 22 2019, 8:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert M. Judd, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 22, 2019 <br><br> Court of Appeals Case No. 18A-CR-3001 <br><br> Appeal from the Dearborn Circuit Court <br><br> The Honorable James D. Humphrey, Judge <br><br> Trial Court Cause No. 15C01-1806-F4-10 |

**Bradford, Judge.**

# Case Summary

[1] Around midnight on May 29, 2018, police encountered Robert Judd as he attempted to break into a vacant home. At the time, Judd was in possession of methamphetamine and a syringe. He was subsequently convicted of Level 5 felony dealing in methamphetamine and Level 6 felony possession of a syringe and was found to be a habitual offender. The trial court sentenced Judd to six years and enhanced his sentence by an additional six years by virtue of his status as a habitual offender. Judd contends on appeal that his aggregate twelve-year sentence is inappropriate. Concluding otherwise, we affirm.

# Facts and Procedural History

[2] Around midnight on May 29, 2018, Lawrenceburg Police Officers Bill Lynam and Troy Cochran were dispatched to investigate two individuals who were attempting to break into a vacant home. Upon arriving at the home, they encountered Judd and Samantha Duffy. Officer Lynam asked to see Judd's identification and Judd indicated that it was in his nearby vehicle. As Judd was rummaging around the vehicle, Officer Lynam observed a syringe on the driver's-side floorboard, which Judd attempted to push out of view. Judd was then placed under arrest.

[3] During a search incident to Judd's arrest, Officers Lynam and Cochran recovered a plastic bag from Judd's front pocket. The bag held two additional baggies "containing a crystal type substance" which given his training and

experience as a police officer, Officer Lynam knew to be "consistent with methamphetamine." Tr. Vol. I p. 46. The outer bag contained .03 grams of methamphetamine and the two additional baggies each contained .37 grams of methamphetamine.[1] The officers also recovered a jeweler's bag containing "cigarette cellophane" and a "ripped corner of a plastic baggie" and a cellular telephone from Judd. Tr. Vol. I p. 112. The officers requested and were granted a warrant allowing them to search Judd's telephone. In doing so, the Officers reviewed text messages which indicated that Judd was active in dealing drugs. For example, in one exchange Duff asked Judd to sell her twenty dollars' worth of methamphetamine. Judd subsequently admitted that he "gave [Duff] the dope" during a monitored phone call from jail. Tr. Vol. I p. 165.

[4] The State charged Judd with Count I – Level 4 felony dealing in methamphetamine, Count II – Level 5 felony dealing in methamphetamine, Count III – Level 6 felony possession of methamphetamine, and Count IV – Level 6 felony possession of a syringe. The State also alleged that Judd is a habitual offender. Following trial, a jury found Judd guilty of Counts II through IV, but not guilty of Count I. The jury also found Judd to be a habitual offender.

---

[1] Despite the fact that technicians only tested the substance found in one of the additional baggies, one may reasonably infer that both of the additional baggies contained methamphetamine given that the substances in the baggies "were visually consistent with one another" and were divided into equal amounts. Tr. Vol. I p. 79.

On November 13, 2018, the trial court sentenced Judd to six years on Count II, merged Count III into Count II, and sentenced Judd to two years on Count IV. The trial court indicated that the sentence for Count IV would run "concurrent with Count II." Appellant's App. Vol. III p. 182. The trial court further ordered that Judd "shall receive an enhancement of six (6) years which shall attach to Count II," for an aggregate sentence of twelve years. Appellant's App. Vol. III p. 182.

# Discussion and Decision

Judd contends that his aggregate twelve-year sentence is inappropriate in light of the nature of his offense and his character. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (internal quotation omitted). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[7]     Judd argues that his sentence is inappropriate with respect to the nature of his offenses because he only possessed a small amount of drugs and one of the prior convictions used to prove that he is a habitual offender was a Level 6 felony. At the time of his arrest, Judd possessed .77 grams of methamphetamine. Of this, .74 grams were packaged into two equal parts in a manner consistent with the sale of drugs. Text messages on Judd's telephone indicated not only that he was active in the sale of drugs, but also that he was actively attempting to acquire more drugs. In addition, when selling methamphetamine to Duffy, he also provided her with a syringe with which she could inject the methamphetamine into her system.[2] We believe that possession of drugs for the purpose of selling said drugs to others is a serious offense, especially considering that Judd also provided his buyers with the means by which they could ingest the drugs.

[8]     As for Judd's argument relating to the habitual offender finding, while one of the underlying convictions relied on by the State was a Level 6 felony, the other was a Class B felony. Indiana Code section 35-50-2-8(c) provides that "a person convicted of a Level 5 felony is a habitual offender if the state proves … that the person has been convicted of two (2) prior unrelated felonies" and "at least one (1) of the prior unrelated felonies is not a Level 6 felony or a Class D felony[.]" The convictions relied upon by the State satisfy Indiana Code section 35-50-2-8(c) and we cannot say that Judd's status as a habitual offender is not

---

[2] This syringe is in addition to the syringe found in Judd's vehicle.

egregious simply because one of the underlying felonies relied on by the State was a Level 6 felony.

[9] Judd's character also fully justifies his sentence. Judd's actions and criminal history demonstrate a disregard for the law. His "history of bad behavior began in juvenile court when he was fourteen (14) years old, and he is now thirty-four (34)." Tr. Vol. II p. 57. As an adult, he has accumulated four prior felony convictions, five prior misdemeanor convictions, and four probation violations. His convictions range from drug possession to violent offenses such as battery and robbery resulting in bodily injury. Judd has failed to reform his behavior as is evidenced by the fact that he was released from incarceration for one of these prior convictions a mere forty-seven days before committing the instant offenses. Judd is also considered "very high" risk to reoffend. Appellant's App. Vol. III p. 158. In addition, Judd has continued to show himself to be of poor character while incarcerated in the Dearborn County Law Enforcement Center during the pendency of this case. For instance, on October 17, 2018, Judd defaced jail property by writing a vulgar comment directed at a female officer on a window in the recreation area of the jail. Judd has failed to persuade us that his sentence is inappropriate. *See Sanchez*, 891 N.E.2d at 176.

[10] The judgment of the trial court is affirmed.

Crone, J., and Tavitas, J., concur.